IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISABELLA BRISTOW, on behalf of herself and others similarly situated, <br><br>      Plaintiff, <br><br>  v. <br><br>AMERIHEALTH CARITAS, <br>      Defendant. | 2:22-cv-00235-WB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiff Isabella Bristow ("Originating Plaintiff") and Defendant AmeriHealth Caritas Services, LLC ("Defendant" or "AmeriHealth Caritas")[1] have settled this Fair Labor Standards Act ("FLSA") lawsuit for a maximum of $2,500,000 per the accompanying Collective Action Settlement Agreement ("Agreement"). *See* ECF No. 45-1. For the reasons described herein, Plaintiff submits that the settlement obtained is fair and reasonable and that therefore approval is warranted.

**I. BACKGROUND**

  **A. Facts and Procedural Background**

Originating Plaintiff and Opt-in Plaintiffs ("Plaintiffs") worked as CHC Service Coordinators ("SCs") for AmeriHealth Caritas. On September 24, 2021, Plaintiff Bristow filed a class and collective action on behalf of herself and others similarly situated under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* She alleges that AmeriHealth Caritas misclassified her and other

---

[1]  Plaintiff identified the incorrect legal entity in her Amended Complaint. Plaintiff was employed by AmeriHealth Caritas Services, LLC, not AmeriHealth Caritas.

1

CHC Service Coordinators as exempt from overtime and therefore failed to pay them any overtime when they worked over 40 hours a week.

On March 11, 2022, the court entered an order granting the Parties' joint motion to approve the stipulation to conditional certification, whereby the Parties agreed to conditionally certify this action under 29 U.S.C. § 216(b) for notice purposes only, in exchange for Plaintiff's agreement not to seek Rule 23 certification of the PMWA class action claims raised in the Complaint.  The following FLSA collective was conditionally certified: "All individuals employed by Defendant as [CHC Service Coordinators] during any time three years prior to the date of Notice."  Currently, this case includes 204 Plaintiffs (including Ms. Bristow).[2]  As part of the Parties' stipulation, Defendant agreed that all Plaintiffs would be deemed as pursuing individual claims under the PMWA by virtue of opting into the lawsuit.  The Parties further agreed that the limitations period for such state law claims would be tolled as of the Stipulation date (*i.e.*, March 11, 2022).[3]

Following the notice period, discovery ensued.  The Parties engaged in extensive discovery, including written discovery of the Originating Plaintiff and twenty (20) Opt-in Plaintiffs; depositions of the Originating Plaintiff, seven (7) Opt-In Plaintiffs, four (4) Service Coordinator Supervisors, the two (2) employees identified by Defendant as having been involved in Defendant's original classification decision, two (2) Rule 30(b)(6) corporate designees, the former Director of Service Coordination for the Southeast Zone (who oversaw the majority of

---

[2]     Seven (7) Plaintiffs who opted-in to the case were ultimately dismissed from the action for failure to respond to discovery.  Two additional opt-in Plaintiffs voluntarily withdrew their opt-in notices.

[3]     Under this stipulation, the PMWA claims of Originating Plaintiff were tolled with the filing of the Complaint on September 23, 2021, and those of individuals who opted in prior to March 11, 2022 were tolled as of the date that his/her consent form was filed; for the remaining Plaintiffs, their claims were tolled as of March 11, 2022.

Plaintiffs' work for the majority of the liability period), and the Parties' respective liability and damages experts. Defendant produced over 11,000 pages of documents, including bi-weekly payroll data for Plaintiffs, which Plaintiff's damages expert analyzed for purposes of calculating potential damages.

The initial discovery deadline closed January 30, 2023.[4] Toward the close of the initial discovery period, the Parties agreed to engage a private, third-party mediator to explore a possible resolution of this matter prior to summary judgment and decertification briefing. The Parties attended a mediation with the Honorable Thomas J. Rueter (retired) on March 16, 2023. Following a full day of mediation, the Parties reached an agreement in principle to settle this matter. The Parties thereafter prepared and executed the formal settlement Agreement filed as ECF No. 45-1.

B.   **Settlement Terms**

As indicated in the Agreement, the settlement requires Defendant to pay a total of $2,500,000. If the Court approves the requested $880,000 in attorneys' fees, expenses, service awards, and Administrator costs,[5] the remainder of the settlement fund will be allocated to Plaintiffs as set forth in Exhibit A to the Agreement. *See* Agreement, ECF No. 45-1, at ¶ 1 & Ex. A. The allocation is based upon the number of workweeks each Plaintiff worked during the earlier of March 11, 2019 or (in the case of Originating Plaintiff and Plaintiffs who opted in prior to March 11, 2022) their opt-in date. All Plaintiffs will be issued settlement checks for their

---

[4]   The Parties agreed to defer most ESI discovery until after resolution of Defendant's motion for decertification of the collective and any motions for summary judgment. *See* ECF No. 34 at ¶ 9.

[5]   This number includes $10,000 in administration costs, although the administration estimate provided by the Administrator, Settlement Services, Inc, exceeds this amount. In the event administration costs exceed $10,000 or any lower amount approved by the Court, Plaintiffs' counsel will bear any additional administration costs.

3

Payout Amounts. Any Plaintiff who timely negotiates his or her check will enter into a limited release of wage and hour claims arising from their employment with Defendant as CHC Service Coordinators. *See* Agreement, ECF No. 45-1, at ¶ 4. Originating Plaintiff will also agree to a general release if the Court approves her requested service award payment. *See id.* at ¶ 5. Any Plaintiff who does not timely negotiate his or her check will not release any claims, but Originating Plaintiff may not refuse to negotiate her checks. *See id.* at ¶ 4.

### C.  Details Regarding the Payments to Plaintiffs

The settlement distributes payments to the 204 Plaintiffs based on the number of weeks each worked as CHC Service Coordinators during the relevant time period. After backing-out the $12,750 in proposed service awards, the collective will receive $2,487,250. This gross recovery figure includes attorney's fees and costs, which, as discussed below, constitute approximately 33% of the total settlement fund. *See Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020) (in evaluating a settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees.").

With respect to Plaintiffs' allegation that they were misclassified as overtime-exempt, the gross recovery represents an average of approximately 5 hours of overtime a week, unliquidated, under the FLSA's "regular rate" method for calculating overtime – *i.e.*, dividing an employee's salary by 40 hours to calculate their regular hourly rate, and then multiplying that regular rate by time and a half.[6] As discussed further in pages 11-12 below, this amount represents adequate

---

[6] Here, Defendant would have likely argued that the FLSA's "fluctuating workweek" method should apply to Plaintiff's FLSA claims. That method (also referred to as the "half-time" method), adopted by the Supreme Court in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), is utilized by many federal courts in awarding overtime pay to misclassified

4

compensation for Plaintiffs for overtime hours alleged during the maximum three-year limitations period.[7]

D.     **Litigation Risks**

Defendant is represented by skilled defense lawyers who, absent settlement, were prepared to raise defenses that might have resulted in Plaintiffs losing this lawsuit or recovering less than the settlement amount. Some of these risks are described below:

First, Defendant might have established that CHC Service Coordinators are overtime exempt under the FLSA's and PMWA's "administrative exemption." *See generally* 29 C.F.R. § 541.700, *et seq*. While Plaintiffs allege that they would have presented evidence and caselaw to dispute this, they nonetheless face a real risk that the Court or jury would find the CHC Service Coordinator position to be overtime-exempt.

Second, while the settlement covers the period beginning three-years prior to March 11, 2022 (or earlier in the case of Originating Plaintiff and early Opt-in Plaintiffs), Plaintiffs would

---

salaried employees under the FLSA. *See generally Depalma v. The Scotts Co., LLC*, 2019 WL 2417706, 2019 U.S. Dist. LEXIS 97036, *23-30 (D.N.J. June 10, 2019). Plaintiffs vigorously dispute this and maintain that they are entitled to recover overtime using a 1.5 multiplier both under the FLSA *and* the PMWA, which does not allow use of the fluctuating workweek method (*see* note 7 infra). Under the fluctuating workweek method, however, Plaintiffs' recovery under the FLSA would represent an even higher number of average overtime hours a week.

[7]     *Missel*'s half-time methodology does not apply to the PMWA overtime claim in the wake of the Pennsylvania Supreme Court's recent opinion in *Chevalier v. General Nutrition Centers, Inc.*, 220 A.3d 1038 (Pa. 2019), which held that salaried, overtime-eligible employees are entitled to overtime pay equaling 150% of their regular rate. However, "[w]hen, as here, the gross amount of the settlement is not apportioned among the various FLSA and non-FLSA claims, the Court will consider whether the gross amount satisfies the FLSA claim only. This is so because the Court is required to approve only the part of the settlement agreement that implicates the FLSA claims." *Solkoff*, 435 F. Supp. 3d at 655. Thus, the Court need not evaluate the settlement based on PMWA principles. *See Devine v. Northeast Treatment Ctrs.*, 2021 U.S. Dist. LEXIS 197924, *16 n.3 (E.D. Pa. Oct. 14, 2021). Moreover, even if the Court did undertake such an evaluation, the settlement's payout equates to over 5 hours of overtime pay per week under the PMWA methodology, which also represents a fair and appropriate recovery for Plaintiffs.

need to establish a "willful" FLSA violation in order to benefit from a three-year (rather than a two-year) limitations period. This would require Plaintiffs to demonstrate that Defendant "show[ed] a 'disregard for the governing statute and an indifference to its requirements.'" *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Meeting this standard could be difficult where, as here, Defendant asserts that, among other actions, it consulted Department of Labor guidance regarding the administrative exemption in deciding to classify the CHC Service Coordinator position as exempt and submitted an expert report on liability supporting the exemption.

Third, as further discussed below, Defendant would have moved to decertify the collective, arguing that evidence of individualized differences in the Plaintiffs' duties and their work hours precludes final certification of the collective. If Defendant were successful, Plaintiffs would be required to file individual lawsuits to pursue their claims. *See infra* p. 11.

Fourth, as discussed further below, the Parties would have hotly disputed the amount of overtime work performed and whether some Plaintiffs worked overtime at all. *See infra* pp. 11-12.

## II.   ARGUMENT

Originating Plaintiff submits that approval of the settlement is warranted for the following reasons:

### A.   The Settlement May Be Approved in a Single Step.

Unlike class action settlements under Federal Rule of Civil Procedure 23 that involve a two-step court approval process, courts routinely approve FLSA settlements in one step. As our Court of Appeals recently explained:

> Rule 23 also contains important post-certification protections that are notably absent in [FLSA] § 216(b). Because absent class members are not present in court, the court

6

> is authorized to issue various orders "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B). The FLSA does not provide any analogous authority. Rule 23 also establishes a rigorous system surrounding the settlement of class actions in which absent class members are notified and provided an opportunity to opt-out and to object. Fed. R. Civ. P. 23(e). And before approval of the settlement, the court must conduct a hearing and find "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). ***Once again, FLSA collective actions contain none of these protections.*** See 29 U.S.C. § 216(b); McLaughlin on Class Actions § 2:16 ("Unlike class actions, which cannot be settled without notice to absent class members under Rule 23(e), a collective action may be settled without notice to absentee members.").

*Fischer v. Federal Express Corp.*, 42 F.4th 366, 377 (3rd Cir. 2022) (emphasis supplied); *see also Haskett v. Uber Technologies, Inc.*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) ("Unlike Rule 23, section 216(b) does not require a district court to notify potential claimants about a proposed settlement.").[8] Consistent with the above, this Court often reviews FLSA collective settlements in a single step. *See*, *e.g.*, *Goncalves v. AJC Construction Inc.*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995 (E.D. Pa. July 28, 2022); *Gravely v. PetroChoice, LLC*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746 (E.D. Pa. June 28, 2022); *Travis v. Asociacion Puertorriquenos En Marcha, Inc.*, 2020 U.S. Dist. LEXIS 126762, 2020 WL 4059715 (E.D. Pa. July 20, 2020); *Ogunlana v. Atl. Diagnostic Labs. LLC*, 2020 U.S. Dist. LEXIS 55619, 2020 WL 1531846 (E.D. Pa. Mar. 31, 2020); *Williams v. Bethanna*, 2019 U.S. Dist. LEXIS 7350 (E.D. Pa. Jan. 15, 2019); *Santos v. El Gallito Mexican Bakery II LLC*, 2018 U.S. Dist. LEXIS 42363 (E.D. Pa. Mar. 12, 2018).

    **B.**    **Approval of the Settlement is Warranted.**

While the Third Circuit Court of Appeals has not addressed whether parties can settle FLSA collective action suits for unpaid wages without court approval, "district courts

---

[8]    *Accord Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 U.S. Dist. LEXIS 87928, *2-3 (D. Mass. June 8, 2017) (endorsing one-step approval of collective settlements); *Koszyk v. Country Fin.*, 2016 WL 5109196, 2016 U.S. Dist. LEXIS 126893, *2-3 (N.D. Ill. Sept. 16, 2016) (same).

7

within the Third Circuit have followed the majority position and assumed that judicial approval is necessary. *See*, *e.g.*, *Skaggs v. Gabriel Bros.*, 2021 WL 2184769, 2021 U.S. Dist. LEXIS 101044 (M.D. Pa. May 28, 2021) (collecting cases). An FLSA settlement warrants approval when it constitutes "a reasonable compromise of contested issues and not merely a waiver of statutory rights caused by the employer's overreaching." *Gravely*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *3. "The agreement must (1) settle a bona fide dispute, (2) be fair and reasonable to the employees and (3) further the FLSA's enforcement in the workplace." *Id.* Here, all three criteria are satisfied:

1. **The Settlement Resolves a *Bona Fide* FLSA Dispute.**

A *bona fide* dispute exists "when there are factual issues between the parties such as the amount of back wages." *Gravely*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *3. Such is the case here. Defendant has retained able defense counsel and filed an answer denying liability and asserting various affirmative and other defenses. *See generally* Answer (ECF No. 3). Defendant continues to deny liability and dispute that this case is appropriate for collective adjudication and that the Plaintiffs worked the hours claimed or that many of them worked overtime at all. And if the Parties had not reached a settlement, Defendant would have soon filed a motion for summary judgment or in the alternative for decertification.

2. **The Settlement "Furthers the FLSA's Implementation."**

Generally speaking, settlements further the FLSA's implementation where they lack "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *Travis*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762, at *6 (internal quotations omitted). The instant settlement avoids such pitfalls. It is publicly filed, *see* ECF No. 45-1, and the "confidentiality" provision is narrowly tailored to merely prevent the employees and undersigned

counsel from publicizing the settlement to the news media or via social media. *See id.* at ¶ 11. This type of limited confidentiality provision does not frustrate the FLSA's purpose. *See, e.g., Ogunlana*, 2020 WL 1531846, 2020 U.S. Dist. LEXIS 55619, at *13-14.

Moreover, the release is strictly limited to wage and hour claims arising out of Plaintiffs' employment as CHC Service Coordinators. *See* Agreement (ECF No. 45-1) at ¶ 4.[9] Such limited releases do not frustrate the FLSA. *See, e.g., Travis*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762, at *6; *Devine v. Northeast Treatment Ctrs.*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, at *16, 21-23 (E.D. Pa. Oct. 14, 2021).

### 3. The Settlement is "Fair and Reasonable."

In the absence of Third Circuit guidance, district courts often look to the Third Circuit's "*Girsh* factors" for analysis of a class settlement under Federal Rule of Civil Procedure 23(e) to evaluate whether an FLSA settlement is "fair and reasonable." *See Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975); *see also Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746, 764 (E.D. Pa. July 18, 2016). Here, the *Girsh* factors favor approval:

*Girsh* Factor 1 – *Complexity, Expense and Likely Duration of the Litigation*: This factor favors approval because, absent settlement, this litigation would entail a series of complex litigation events, including, but not limited to, resolving Defendant's anticipated decertification and summary judgment motions and, if summary judgment were denied, additional discovery pertaining to damages and electronically stored information, pretrial motions addressing the proper scope of "representative" evidence as well as severance of any state law claims, and potentially an extensive trial.

---

[9]   Only the Originating Plaintiff will execute a general release of claims if the Court approves her requested service award payment.

*Girsh Factor 2 – Reaction of the Class to the Settlement*:  This factor favors approval. Unlike a Rule 23 opt-out settlement, there are no absent class members here.  Instead, only opt-in Plaintiffs who affirmatively joined this litigation pursuant to 29 U.S.C. § 216(b), and identified in Exhibit A to the Settlement Agreement, *see* ECF No. 45-1, are covered by this settlement. Each opt-in Plaintiff agreed in joining this collective to be "bound by the judgment of the Court on all issues in this action, including the fairness of any settlement which may or may not be reached."  *See, e.g.*, ECF No. 15 at pp. 8, 10.  In addition, the Originating Plaintiff, who attended and participated in the mediation that led to the settlement, has signaled her approval of the settlement by executing the Settlement Agreement.

Although Plaintiffs' counsel had full authority to settle the claims of all Plaintiffs, *see* ECF No. 15 at pp. 8, 10; Plaintiffs' counsel nevertheless communicated broadly with Plaintiffs covered by this settlement before seeking approval and the response to the settlement was overwhelmingly positive.  Furthermore, this factor bears less weight in this case because to the extent that any individual opt-in Plaintiff ultimately decides that they prefer to retain their rights, the notice they will receive with their check is clear that they can simply decline to cash their check.  If any opt-in Plaintiff then decided to pursue their own individual claim, their claim would have been tolled as they opted into this case. [10]

---

[10]   The few responses expressing concern with the settlement relate to the amount of hours Plaintiffs believed they worked, the attorneys' fees requested, and (in the case of one individual) the amount of the service award requested on her behalf.  *See* ECF No. 45-2, Ex. E (Responses from Plaintiffs).  For the reasons explained herein, however, the settlement amount is reasonable in light of the estimated hours worked by Plaintiffs (which is highly contested), and the requested attorneys' fees and service awards are reasonable and within the ranges routinely approved by courts.  Again, to the extent that any individual opt-in Plaintiff ultimately receives the settlement notice and decides that they prefer to retain their rights, the notice is clear that they can decline to cash their check and pursue their own individual claim.

*Girsh Factor 3 – Stage of the Proceedings and the Amount of Discovery Completed*:

This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) – favors approval. Here, settlement is the result of arms-length bargaining overseen by Judge Rueter and conducted after extensive discovery. *See* pp. 2-3 *supra*.

*Girsh Factors 4 and 5 – Risk of Establishing Liability and Proving Damages*: These factors "examine what the potential rewards (or downside) of the litigation had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). As previously discussed, continued litigation would pose significant risk that Plaintiffs might recover nothing or less than the value of the settlement. *See* pp. 7-8 *supra*. As such, these factors favor settlement.

*Girsh Factor 6 – Risks of Maintaining the Class Through Trial*: This factor is neutral. Although Plaintiffs believe Defendant's motion for decertification would have been unsuccessful, Defendant vigorously disputed that Plaintiffs' claims could proceed to trial on a collective basis, and asserts that differences in Plaintiffs' duties and the number of hours they worked would preclude final certification. *See Altnor*, 197 F. Supp. 3d at 762 (explaining that this factor "deserves only minimal consideration").

*Girsh Factor 7 – Ability of Defendant to Withstand a Greater Judgment*: This factor is neutral where, as here, the risk of non-payment did not factor into Plaintiffs' counsel's settlement analysis. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016).

*Girsh Factors 8-9 – The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation*: These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light

of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). The question is whether, in light of these risks, the settlement class is getting "good value." *Id.* Here, Plaintiffs are getting a fair and appropriate value. As discussed at pages 5-6 *supra*, continued litigation poses a risk that Plaintiffs might recover nothing or less than the value of the settlement. Viewed against these significant litigation risks, and based on Plaintiffs' counsel's calculations, the settlement will appropriately compensate Plaintiff and Opt-In Plaintiffs for overtime hours alleged during the maximum limitations period. *See* p. 4-5 *supra*. Indeed, many of the Plaintiffs who provided written discovery responses and sat for deposition estimated that they recalled working 5-10 hours of overtime in some weeks and acknowledged that they did not work overtime every week; others testified that they infrequently worked overtime.

Absent settlement, Defendant was poised to argue that Plaintiffs did not work substantial overtime and that some did not work overtime at all. Specifically, Defendant engaged an expert to analyze records of Plaintiffs' use of Defendant's eLTSS system – a program that Plaintiffs used to perform much of their work. Defendant asserted that these records captured the vast majority of Plaintiffs' working time and that their expert's analysis of these records showed there were many weeks where Plaintiffs performed no overtime at all. Although Plaintiff would have sought discovery of other records bearing on their hours worked and relied on Plaintiffs' own recollection of their hours worked, proving uncompensated overtime hours under these circumstances would be no easy task. *See*, *e.g.*, *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188-90 (3d Cir. 2014) (affirming district court finding that employees failed to present sufficient evidence of unpaid overtime hours).

*Summary of the Girsh Factors:* To sum up, seven of the nine *Girsh* factors favor approval of the settlement, and the remaining two factors are neutral.

In sum, the above payments are "fair and reasonable."

### 4. Approval of the Attorney's Fees/Expenses is Warranted.

Finally, courts reviewing FLSA settlements must ensure that the attorney's fees and expenses paid to counsel are reasonable. *See*, *e.g.*, *Gravely* 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *4-5. Here, the settlement contemplates a payment to Plaintiffs' Counsel of $857,990 for all attorney's fees, costs and expenses (not inclusive of service awards and administrator expenses). *See* (Agreement) ECF No. 45-1 at ¶ 8. After reducing this amount by the $24,879 in costs and expenses incurred by Plaintiffs' Counsel, *see* Declaration of Deirdre Aaron ("Aaron Decl.") (ECF No. 45-2) at ¶ 30 & Ex. D and Declaration of Michael Murphy ("Murphy Decl.") (ECF No. 45-3) at ¶ 15, the requested attorney's fee constitutes approximately 33% of the $2,500,000 settlement fund. This amount will be further reduced in the likely event that settlement administration costs exceed $10,000, as Plaintiffs' Counsel has agreed to bear any administration costs in excess of $10,000 or otherwise in excess of approved costs. Plaintiffs assert that this fee falls well within the range of fees approved by federal judges in other wage and hour settlements. *See*, *e.g.*, *Goncalves*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995, at *9-10 (fee of "slightly less than 36 percent of the total recovery . . . is a reasonable amount in FLSA cases"); *Gravely* 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746, at *5 (35% fee "in line with fee awards by courts in the Third Circuit").

Finally, some judges reviewing an attorney's fee perform a "lodestar crosscheck" of the proposed fee award. When performed, however, Plaintiffs assert that the cross-check "need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec. Litig.*, 396

13

F.3d 294, 306 (3d Cir. 2005). Lodestar "'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *Mejia v. KVK-Tech, Inc.*, 2020 WL 5292074, 2020 U.S. Dist. LEXIS 162235, *13 (E.D. Pa. Sept. 4, 2020) (quoting *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998); *accord Stevens v. SEI Invs. Co.*, 2020 U.S. Dist. LEXIS 35471, 2020 WL 996418, *39 (E.D. Pa. Feb. 28, 2020) (citing cases).

For the reasons discussed in the accompanying declaration, Plaintiffs' Counsel utilize the hourly rates described in the fee scheduled developed by Philadelphia Community Legal Services in calculating its lodestar. *See* Aaron Decl. (ECF No. 45-2) at ¶¶ 26, 29; Murphy Decl. (ECF No. 45-3) at ¶¶ 12, 14. Moreover, Plaintiffs' Counsel's fee lodestar as of April 12, 2023 stands at $421,201, *see* ECF No. 45-2 ¶ 29 & ECF No. 45-3 ¶ 14, which results in a lodestar "multiplier" of only **1.98**. Plaintiffs assert that this relatively modest multiplier lends further support to the fee's reasonableness. *See, e.g.*, *Mejia*, 2020 WL 5292074, 2020 U.S. Dist. LEXIS 162235, *13 (lodestar "'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'") (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 341); *accord Stevens*, 2020 WL 996418, 2020 U.S. Dist. LEXIS 35471, *39 (citing cases).

     **5.**     **Approval of the Service Awards is Warranted.**

In addition, Plaintiffs assert that the $7,500 service award sought by Originating Plaintiff and $750 service award sought by each Opt-in Plaintiff who was deposed are reasonable. In class/collective litigation, service award payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of litigation, and to reward the public

service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011). Service awards

> are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. . . . Although this Court has no reason to believe that [the defendant] has or will take retaliatory action towards either [Plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (internal citations omitted); *accord Myers v. Jani-King of Phila., Inc.*, 2019 U.S. Dist. LEXIS 144929, 2019 WL 4034736, *26 (E.D. Pa. Aug. 26, 2019).

Here, Plaintiffs assert that the requested service awards are warranted. At the initiation of this case and during the majority of the litigation of this case, Originating Plaintiff Bristow was a current employee. Although there is no suggestion here that Defendant took any retaliatory action against Plaintiff for filing this lawsuit, she nonetheless undertook what she believed to be the risk of bringing this case on behalf of herself and other similarly situated employees. *See Frank*, 228 F.R.D. at 187-88. Throughout this litigation, she has been a diligent advocate for herself and her co-workers. She responded to written discovery and produced documents, sat for a full day deposition, and attended the mediation.

Finally, Plaintiffs assert that the requested service award for the Originating Plaintiff compares favorably with awards approved by this Court in other wage and hour class/collective actions. *See, e.g.*, *Hall v. Accolade, Inc.*, 2020 U.S. Dist. LEXIS 52632, 2020 WL 1477688, at *25-26 (E.D. Pa. Mar. 25, 2020) ($10,000); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, *3 (E.D. Pa. Oct. 24, 2019) ($10,000); *Myers*, 2019 WL 4034736, at *25-26

($10,000); *Arrington v. Optimum Healthcare IT, LLC*, 2018 WL 5631625, 2018 U.S. Dist. LEXIS 186192, *25-26 (E.D. Pa. Oct. 31, 2018) ($7,500); *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, 2016 U.S. Dist. LEXIS 170823, *28-29 (E.D. Pa. Dec. 9, 2016) ($7,500); *Schaub v. Chesapeake & Del. Brewing Holdings*, 2016 U.S. Dist. LEXIS 157203, *14-15 (E.D. Pa. Nov. 14, 2016) ($9,000); *Cikra v. Lami Prods., LLC*, 2016 U.S. Dist. LEXIS 156798, *4-5 (E.D. Pa. Nov. 10, 2016) ($12,500).

Plaintiffs assert that the requested service awards of $750 each for seven (7) Opt-in Plaintiffs are likewise warranted. Each of the Opt-in Plaintiffs likewise responded to full written discovery and produced documents, and sat for depositions. The modest service awards requested in light of their efforts are also in line with service awards granted to opt-in plaintiffs in other FLSA cases. *See, e.g.*, *Gofton v. Kforce Inc.*, 2021 U.S. Dist. LEXIS 192363, *7-8 (E.D. Pa. Sept. 30, 2021) (approving $1,000 service award to opt-in plaintiff); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2018) (approving $2,500 award to opt-in plaintiff).

### III. CONCLUSION

For all the above reasons, Plaintiff asks the Court to grant this motion and approve the settlement of this action.

Date: April 24, 2023                                Respectfully,

                                                               /s/ Deirdre Aaron
Peter Winebrake
Deirdre Aaron
Michelle L. Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Michael Murphy
Michael Groh
Murphy Law Group, LLC

Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
(267) 273-1054

*Attorneys for Plaintiffs*